[No. 939.   Decided May 18, 1893.]

THE STATE OF WASHINGTON, *on the relation of the City of Seattle, Appellant*, v. D. R. ABRAHAMS, *Respondent*.

TAXATION IN CITIES OF FIRST CLASS—ASSESSMENT BY COUNTY ASSESSOR.

The general revenue law adopted March 15, 1893, requiring that the names of persons to whom personal property is assessed shall be listed alphabetically in the roll, and that real estate shall be listed numerically, must be construed in connection with the provisions of the act of March 9, 1893, requiring assessors in counties containing cities of the first class to list the property within the limits of any such city in as compact a form as practicable on the assessment roll, and when, by reason of a change in the boundaries of any city, or otherwise, the rate of taxes is required to differ in different districts thereof, the assessor shall properly segregate the real and personal property in each district so that each rate of taxation may be readily applied to property lawfully coming thereunder; and for the purposes of city assessments, the making of separate lists for different districts, which shall themselves be arranged alphabetically, in the case of personal property, and numerically in the case of real property, will be a full compliance with the statute.

*Appeal from Superior Court, King County.*

*George Donworth*, and *James B. Howe*, for appellant.

*A. G. McBride*, for respondent.

The opinion of the court was delivered by

STILES, J.—It seems to us that the judgment of the court below in this case allows the assessor to substitute

his own convenience in making up the assessment roll of
King county in place of the express mandate of the law.
This court held a few days since, in the case of *State v.*
*Carson, ante,* p. 250, that the act of March 9, 1893 (Laws,
p. 167), providing for the assessment and collection of
taxes in cities of the first class, was constitutional, and was
not repealed by the general revenue law of March 15th
(Laws, p. 323).    The first section of the former act re-
quired the assessors in counties containing cities of the first
class to list the property within the limits of any such city,
subject to taxes therein, in as compact a form as practi-
cable, on the assessment roll.    It was also provided that
when, by reason of a change in the boundaries of any city,
or otherwise, the rate of taxes is required to differ in differ-
ent districts thereof, the assessor should properly segregate
the real and personal property in each district, so that each
rate of taxation might be readily applied to property law-
fully coming thereunder.    The admitted facts in this case
are that the assessor of King county proposes to accom-
plish both requirements by merely writing or printing
upon the face of the roll, opposite each description of prop-
erty, whether real or personal, the name of the city of
Seattle; and as there are two rates of taxation in different
portions of the city, growing out of the fact that consider-
able additional territory has been added to the original city
since certain indebtedness was incurred, the assessor will
make the segregation of districts by using the letters
"O. L." and "N. L.," standing for "old limits" and
"new limits," opposite the several descriptions upon the
roll.    Opposed to this method, the city claims that the as-
sessor in the case of real property, should entirely separate
all of that contained in the old limits from the other real
property in the county, and likewise that contained in the
new limits, and place these two masses of property by
themselves in his roll; and the same demand is made in

regard to taxes upon personal property which are assessed
to individual owners by name.    We think these demands
are entirely just, and that in no other way will there be a
compliance with the requirements of the statute.    The only
reason given for declining to follow this method, outside
of that of the convenience of the officers, is that the gen-
eral revenue law adopted March 15th requires, in general
terms, that the names of persons to whom personal prop-
erty is assessed shall be listed alphabetically in the roll,
and that real estate shall be listed numerically.    But these
two statutes must be taken together in considering these
latter provisions.    An absolute alphabetical and numerical
arrangement will not result if the work is done in the man-
ner demanded by the city, it is true; but, in view of the
existence of the law of March 9th, we must hold that an ab-
solute adherence to the letter of the statute as to alphabet-
ical and numerical arrangement is not required, but that
the making of separate lists, which shall themselves be ar-
ranged alphabetically in the case of personal property, and
numerically in the case of real property, will be a full
compliance with the statute.    The assessment blanks pre-
pared by the county auditor, a copy of which has been
presented in the case, seem to comply with the other re-
quirements of the statute, and they can be used to carry
out the segregation which we think should be made, as
well as they could be if the assessor's plan were followed.

The gist of the whole contention between the assessor
and the city is, that the assessor considers "designation"
to be equivalent to "segregation;" but, whatever may be
the meaning of the words in other cases, certainly the spirit
of the act of March 9th would not be met by merely desig-
nating each tract as within or without the city of Seattle,
with "O. L." or "N. L." added, as is here proposed.    It
is pointed out that the act of March 9th only requires that
the segregation of the city property be such as to place it

in as "compact a form as practicable," and that the assessor and his witnesses have shown that the arrangement proposed by the city is not the most practicable. The evidence only goes to show, however, that, while the city's method is entirely practicable, the assessor's method would be more easily followed, and would cost less, and that the business of collecting the taxes could be more easily done upon that kind of a roll, all of which amounts only to a showing of superior convenience to the officers and less expense. But, as to the expense, neither the officers nor the courts have anything to say; and, while convenience is worthy of consideration in such matters, it cannot be permitted to abrogate the statute. We interpret the provisions of the act of March 9th to mean that the legislature had in mind, first of all, the convenience and expense of the cities when it directed that the assessment rolls be prepared in a certain way; and certainly no more inconvenient scheme could be devised for determining the total of the taxable property in a city, and for checking up the payment of taxes levied thereon, than to scatter the descriptions throughout the entire county roll.

The judgment of the superior court is reversed, and the cause remanded, with instructions to make the writ of mandate peremptory.

HOYT, SCOTT and ANDERS, JJ., concur.

DUNBAR, C. J., not sitting.